IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

SHAWNEE COUNTY, KANSAS, BOARD
OF COMMISSIONERS,
           Plaintiff,
   v.

Case No. 15-4006-RDR-KGS

DAIMLER TRUCKS NORTH AMERICA LLC,
OMAHA TRUCK CENTER, INC. dba
Kansas Truck Center, SCRANTON
MANUFACTURING CO., INC.

           Defendants.

**MEMORANDUM AND ORDER**

    This case arises from two fires which originated within trash trucks purchased and operated by plaintiff Board of County Commissioners. Damage from the fires was limited to the trucks. This case is now before the court upon the motion to dismiss of defendants Daimler Trucks North America, LLC and Omaha Truck Center, Inc.  The motion argues that plaintiff's tort-based claims against these two defendants and plaintiff's implied warranty claim against defendant Daimler should be dismissed for failure to state a claim.  The court shall grant the motion for the reasons which follow.

I.  THE ALLEGATIONS OF THE COMPLAINT

    The complaint alleges that plaintiff purchased five 2010 Freightliner trucks, Model M2-106V, from defendant Omaha Truck. Each truck had a rear load trash compactor manufactured and

1

installed by defendant Scranton. The chassis of each truck was manufactured by defendant Daimler.

According to the complaint, a different truck caught fire on two occasions. One fire occurred on February 8, 2013, making the truck a complete loss. The second fire occurred on September 3, 2014 causing a loss of the truck's use. The complaint alleges that the fires were originated by a junction box that controls lights and turn signals on the rear load trash compactor.[1] The junction box has also been referred to as a power distribution module or "PDM." The junction box has a Freightliner part number.

The complaint alleges the following claims: negligence by defendant Daimler; strict liability against Daimler; breach of warranty against Daimler; and breach of implied warranty of merchantability and fitness for an intended purpose against Daimler; negligence by Scranton; strict liability against Scranton; breach of implied warranty against Scranton; negligence against Omaha Truck; and breach of implied warranty against Omaha Truck. Plaintiff seeks to recover economic damages for the loss of the trucks.

---

[1] Plaintiff asserts in response to the motion to dismiss that there are other defects in addition to the junction box, but that discovery must be conducted to identify them.

III. MOTION TO DISMISS STANDARDS

In reviewing a Rule 12(b)(6) motion to dismiss, the court assumes as true all well-pleaded facts. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Under FED.R.CIV.P. 8(a)(2), a complaint must show in a short and plan statement "that the pleader is entitled to relief." The court will grant a Rule 12(b)(6) motion to dismiss when the factual allegations fail to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, supra. This is a "context-specific task" requiring resort to "judicial experience and common sense," "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - 'that the pleader is entitled to relief.'" Id. at 879 (quoting FED.R.CIV.P. 8(a)(2)).

IV. THE ECONOMIC LOSS DOCTRINE REQUIRES THAT PLAINTIFF'S TORT-BASED CLAIMS BE DISMISSED AGAINST DEFENDANTS DAIMLER AND OMAHA TRUCK.

In their motion, defendants assert first that, according to the economic loss doctrine, plaintiff may not recover economic losses on the basis of tort-based product liability and negligence claims. Under the economic loss doctrine, a

3

plaintiff seeking recovery for economic losses only, and not personal injuries or damage to other property, cannot proceed under theories sounding in tort. Rand Const. Co. v. Dearborn Mid-West Conveyor Co., 944 F.Supp.2d 1042, 1062 (D.Kan. 2013); Coker v. Siler, 304 P.3d 689, 693 (Kan.App. 2013).

Plaintiff makes three arguments against the application of the economic loss doctrine in this case. First, plaintiff contends that the damage caused by the "defective goods" – which we assume to mean the junction box – was not limited to the goods themselves because the chassis and the trash compactors were also damaged and that this constituted damage to "other property" not covered by the economic loss doctrine. We reject this argument as inconsistent with Kansas case law precedent. As defendants note, in Koss Construction v. Caterpillar, Inc., 960 P.2d 255 (Kan. App. 1998) and Jordan v. Case Corporation, Inc., 993 P.2d 650 (Kan. App. 1999), it was held that the economic loss doctrine applied to fires caused by defective component parts of a machine (in Koss, hydraulic hoses in a Caterpillar highway roller; in Jordan, an engine in a combine). The Koss decision referred to the analysis of the United States Supreme Court in East River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 867 (1986) stating:

> As the Supreme Court noted in East River, all but the most simple machines have component parts. This does not mean that damage to "other property" results when

4

>one defective part causes damages to another part within the same product.  To hold otherwise would eliminate the distinction between warranty and strict liability.

960 P.2d at 260.

Plaintiff also argues against the application of the economic loss doctrine at this stage of the case upon the grounds that discovery should be allowed to determine defendants' knowledge of the defects at issue in this case. Plaintiff asserts that if defendants had knowledge of a defect or should have had such knowledge, then defendants had a legal duty to warn plaintiff of the dangers posed by the defect. Plaintiff further suggests that defendants had an independent legal duty to design and manufacture the junction box properly and, therefore, plaintiff may proceed with a tort theory.  We reject these arguments because the complaint does not contain the legal or factual allegations which would support a claim of failure to warn and plaintiff does not make citation to Kansas legal authority supporting a violation of an independent legal duty in plaintiff's response to the motion to dismiss.  If subsequent discovery and legal analysis supports a tort-based theory of recovery, then plaintiff may move to amend the complaint.

V.  PLAINTIFF'S BREACH OF IMPLIED WARRANTY CLAIMS AGAINST DEFENDANT DAIMLER MUST BE DISMISSED BECAUSE PLAINTIFF DOES NOT ALLEGE CONTRACTUAL PRIVITY.

Defendant Daimler next argues that plaintiff's claims of breach of an implied warranty should be dismissed because plaintiff does not allege facts establishing contractual privity between plaintiff and defendant Daimler.  In response, plaintiff agrees that contractual privity is not alleged in the complaint.  But, plaintiff argues that contractual privity is not necessary to proceed upon an implied warranty claim under the circumstances alleged in the complaint for three reasons.  Upon due consideration, the court rejects each reason plaintiff offers for negating the privity requirement.

A.  <u>Privity is required even for inherently dangerous products</u>.

Plaintiff contends that privity need not be alleged because the trash trucks were inherently dangerous products.  Plaintiff relies upon the following statement by the Kansas Supreme Court in <u>Professional Lens Plan, Inc. v. Polaris Leasing Corp.</u>, 675 P.2d 887, 898-99 (Kan. 1984):  "implied warranties of fitness and merchantability are not extended to a remote seller or manufacturer of an allegedly defective product, which is not inherently dangerous, for only economic loss, suffered by a buyer who is not in contractual privity with the remote seller or manufacturer."  Plaintiff contends that the trash trucks in

6

question in this case were "inherently dangerous" products because they were heavy vehicles that traveled at relatively high speeds.

The court does not believe the implied warranty claims in this case hinge upon whether the trash trucks were "inherently dangerous" products. The key facts are whether the alleged damage is to the product alone and whether there is privity between plaintiff and defendant Daimler.

The Professional Lens case involved a defective computer leased by a plaintiff who was not in privity to the computer's manufacturer. The defective computer caused an economic loss to the plaintiff. The case did not involve an "inherently dangerous" product and it did not involve personal injuries or damage to other property. The court mentioned both of these factors in denying the implied warranty claims. It is somewhat unclear whether the holding of the case is conditioned upon the "non-dangerousness" of the product or the purely economic loss or both. Notably, the court chose to emphasize the following statement from White and Summers, Uniform Commercial Code 407-08 (2d ed. 1980): "The majority of courts still appear to hold that . . . a non-privity buyer, whether commercial or consumer, cannot recover for direct economic loss on either an express or an implied warranty theory." This suggests that the type of

7

loss is the key factor which determines whether privity is required.

Professional Lens was decided in 1984.  In 1986, the East River case was decided by the Supreme Court and its discussion of tort, contract and strict liability recovery for economic loss, although not binding, was persuasive with many courts including those in Kansas.  Koss, 960 P.2d at 259.  East River's review of the topic does not emphasize the dangerousness of a product as a controlling factor.  Instead, the type of injury is a determining factor regarding the type of claim available and whether contractual privity may be required.  We note the following comments:

> "[Some] cases attempt to differentiate between the disappointed users . . . and the endangered ones, and permit only the latter to sue in tort.  The determination has been said to turn on the nature of the defect, the type of risk, and the manner in which the injury arose.  The Alaska Supreme Court allows a tort action if the defective product creates a situation potentially dangerous to persons or other property, and loss occurs as a proximate result of that danger and under dangerous circumstances.
>    We find [these] positions unsatisfactory."  476 U.S. at 869-70 (interior quotations and citations omitted).

> "[A] manufacturer in a commercial relationship has no duty under either a negligence or a strict products-liability theory to prevent a product from injuring itself."  Id. at 871.

> "'The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident

8

causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products.'" Id., quoting Seely v. White Motor Co., 63 Cal.2d 9, 18, 45 Cal.Rptr. 17, 23 (1965).

"When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." Id.

"Damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.'" Id. at 872, quoting White and Summers, Uniform Commercial Code 406 (2d ed. 1980).

"[B]oth the nature of the injury and the resulting damages indicate it is more natural to think of injury to a product itself in terms of warranty." Id. at 874.

"A warranty action . . . has a built-in limitation on liability, whereas a tort action could subject the manufacturer to damages of an indefinite amount. The limitation in a contract action comes from the agreement of the parties and the requirement that consequential damages, such as lost profits, be a foreseeable result of the breach. In a warranty action where the loss is purely economic, the limitation derives from the requirements of foreseeability and of privity, which is still generally enforced for such claims in a commercial setting." Id., citing White & Summers, supra, at 389, 396, 406-10.[2]

The Koss decision in 1998 found the East River opinion persuasive in rejecting tort and strict liability claims for damage to a defective hydraulic roller which caught fire. The

---

[2] This appears to be the same section of the White and Summers treatise cited by the Kansas Supreme Court in Professional Lens.

9

court also rejected an implied warranty claim, not because it held the machine was not dangerous, but because, absent privity, there could be no implied warranty claim where the defective machine only caused an economic loss.[3] 960 P.2d at 260-61.

In 1999, the Kansas Court of Appeals expanded the Koss holding to a noncommercial transaction in Jordan. There, the court affirmed a summary judgment order dismissing an implied warranty claim against a combine manufacturer and a combine engine manufacturer for the loss of the combine after it caught fire. The court held there could be no recovery in tort or strict liability or implied warranty for pure economic loss. 963 P.2d at 651-52.

In David v. Hett, 270 P.3d 1102 (Kan. 2011), the Kansas Supreme Court engaged in an extended discussion of these cases and others. The court did not indicate that it disapproved of the holdings in Koss or Jordan. We find nothing in our analysis which is contrary to David, although there the court indicated that, in the context of residential construction, the economic

---

[3] Relying upon Koss, Judge Vratil of this court did not consider the dangerousness of a product in dismissing an implied warranty claim where there was a lack of privity. In Full Faith Church of Love West, Inc. v. Hoover Treated Wood Products, Inc., 224 F.Supp.2d 1285, 1292 (D.Kan. 2002), the court keyed upon the fact that the alleged damages were limited to economic loss. The plaintiff asserted that an implied warranty claim to recover economic loss could be maintained if the defective product was inherently dangerous. Judge Vratil rejected this argument, ruling that the privity requirement remains unless the defective product causes physical injuries. Judge O'Connor of this court did employ a dangerousness analysis in Sithon Maritime Co. v. Holiday Mansion, 983 F.Supp. 977, 988 (D.Kan. 1997). This, however, was prior to the Koss decision.

loss doctrine may not bar a tort action alleging that defective construction constituted a violation of a duty imposed by law.

In sum, the trash trucks' alleged dangerousness does not obviate the need to allege contractual privity in order to bring an implied warranty claim to recover for the damage done to the trash trucks because of the trucks' defects.

B.  <u>The damage done to other parts of the trucks not manufactured by defendant Daimler does not make contractual privity unnecessary to bring an implied warranty claim</u>.

Plaintiff also argues that plaintiff suffered damage to more than the chassis manufactured by defendant Daimler and that, therefore, plaintiff suffered damage to "other property" which removes the necessity of showing contractual privity for an implied warranty claim.  We reject this argument for the same reasons discussed earlier in this opinion.  Namely, the argument has been overruled in <u>Koss</u> as making too fine a distinction between a product and the components of the product – a distinction which would eliminate the difference between warranty and strict liability.

C.  <u>The Kansas Consumer Protection Act does not eliminate the need to allege contractual privity in this case</u>.

Finally, plaintiff contends that privity is not required by Kansas law pursuant to the Kansas Consumer Protection Act ("KCPA"), K.S.A. 50-639(b).[4]  The court agrees with defendant

---

[4] K.S.A. 50-639(b) provides:  "Notwithstanding any provision of law, no action for breach of warranty with respect to property subject to a consumer

11

Daimler that the KCPA does not apply to these facts because plaintiff is not a "consumer" as defined by the statute. The KCPA defines "consumer" as "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultures purposes." K.S.A. 50-624(b). The plaintiff Board of County Commissioners does not fit within this definition of "consumer" and therefore, its purchase of the trash trucks is not a "consumer transaction" regulated by the statute. See K.S.A. 50-624(c).

VI. CONCLUSION

For the above-stated reasons, the court shall grant defendants' motion to dismiss and direct that plaintiff's tort claims and implied warranty claims against defendant Daimler be dismissed and that plaintiff's tort claims against defendant Omaha Truck be dismissed. As the court reads the complaint, a breach of warranty claim remains pending against defendant Daimler and a breach of implied warranty claim remains against defendant Omaha Truck.

---

transaction shall fail because of a lack of privity between the claimant and the party against whom the claim is made. An action against any supplier for breach of warranty with respect to property subject to a consumer transaction shall not, of itself, constitute a bar to the bringing of an action against another person."

**IT IS SO ORDERED.**

Dated this 20th day of March, 2015, at Topeka, Kansas.

s/RICHARD D. ROGERS
Richard D. Rogers
United States District Judge