IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BOARD OF COMMISSIONERS OF ) | |
| SHAWNEE COUNTY, KANSAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-4006-KHV |
| ) | |
| DAIMLER TRUCKS NORTH AMERICA, ) | |
| LLC, OMAHA TRUCK CENTER, INC. ) | |
| d.b.a. KANSAS TRUCK CENTER, and ) | |
| DOWNING SALES & SERVICE, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

This matter comes before the court upon Plaintiff Board of Commissioners of Shawnee County, Kansas's Motion to Compel Discovery Responses (ECF No. 116). Plaintiff seeks to compel responses to its Third Set of Interrogatories Number 8 and its Third Set of Requests for Production of Documents Number 4 from Defendant Daimler Trucks North America. For the reasons stated below, the motion is granted in part and denied in part.

**I.   Background**

In 2009, plaintiff purchased from Defendant Omaha Truck Center, Inc. ("Omaha Truck") five Freightliner trucks.[1] Each had a rear load trash compactor manufactured by Scranton Manufacturing Co., Inc. ("Scranton"), installed by Defendant Downing Sales & Service, Inc. ("Downing") and each was built on a chassis manufactured by Defendant Daimler Trucks North America, LLC ("Daimler").[2]  In February of 2013 and September of 2014, two of the trucks

---

[1] Am. Compl. at 2, ECF No. 46.

[2] *Id.*

caught fire under the cab area resulting in plaintiff losing use of the trucks.[3]  According to the amended complaint, plaintiff believes that the fires originated in or around a junction box that controls clearance lights, brake lights, turn signals, and work lights, and was caused by "electrical arcing of a battery cable in and around the Junction Box, which ignited combustible material around the cable."[4]  Plaintiff asserts claims for breach of warranty against Defendant Daimler; breach of implied warranty against Omaha Truck; and negligence and breach of implied warranty against Defendant Downing.[5]

## II.  Discussion

Interrogatory Number 8 and Request for Production of Documents Number 4 are related. Plaintiff issued them after Daimler produced information indicating that the cause of both truck fires may have been a failure in the surge tank.  The surge tank "is an overflow tank for the coolant system on the truck."[6]  Interrogatory Number 8 asks Daimler to "Identify any and all records or documents . . . which relate to fires in Model M2 Freightliner trucks caused by the ignition of antifreeze or similar vehicle coolants."[7]  Request Number 4 corresponds to Interrogatory Number 8 and states: "Provide any and all documents . . . which relate to fires in any vehicle manufactured by [Daimler] which resulted from the ignition of antifreeze or similar vehicle coolants."[8]  Daimler's objections to the request and interrogatory are identical.  It objects

---

[3] *Id.* at 2–3.

[4] *Id.* at 3.

[5] *Id*. at  3–6.

[6] Mem. in Supp. of Mot. to Compel at 1, ECF No. 117.

[7] Mot. to Compel Disc. Resps., ECF No. 116-4 Ex. D at 3.

[8] Mot. to Compel Disc. Resps., ECF No. 116-5 Ex. E at 3.

that they are "vague ambiguous and overly broad seeking documents or things not reasonably calculated to lead to the discovery of admissible evidence . . . in that it asks for documents and things beyond the scope of plaintiff's . . . First Amended Complaint; and fails to seek documents related to substantially similar incidents."[9]

Federal Rule of Civil Procedure 37(a)(3)(B) provides that "A party seeking discovery may move for an order compelling an answer . . . [or] production" if a party fails to answer an interrogatory or to produce documents.[10]  "[W]hen a party files a motion to compel and asks the Court to overrule certain objections, the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable."[11]

Daimler argues that the information sought is not relevant because it is "other incident evidence."[12] Rule 26(a)(1) governs the scope of discovery and states: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . [and information] need not be admissible in evidence to be discoverable."[13]  "There is no presumption in the Federal Rules that a discovery request is

---

[9] *Id.*

[10] Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

[11] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004).

[12] Resp. at 2–4, ECF No. 121.

[13] Fed. R. Civ. P. 26(a)(1) (Rule 26 was amended in December 2015 after this issue was briefed.  However, the comments clarify that the amendment reinforces the parties' existing duty to consider proportionality in discovery.  It is not intended to "change existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations.").

relevant", despite a general presumption in favor of broad discovery.[14] Where the relevance of a particular request is not readily apparent, the proponent of a discovery request must, in the first instance, show the relevance of the requested information to the claims or defenses in the case.[15] Where relevance is apparent, or the proponent of the evidence has shown it is relevant, the burden then shifts to the objecting party to establish a lack of relevance by demonstrating that the requested discovery either does not come within the scope of relevance as defined by Rule 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery.[16]

      Plaintiff contends that this information is relevant because the case involves "an alleged defect in the design and manufacture of the trucks."[17] It argues that although in the pleadings it cited a specific defect that it believed caused the fires, this should not preclude its ability to discover information about other defects, especially where defendants disclosed information about other defects in discovery.[18] Plaintiff notes that Daimler produced at least two sets of documents discussing the likelihood of a surge tank defect.[19] The first is a letter from Defendant Omaha Truck's president and CEO Trey Mytty to Daimler that mentions a problem with the surge tanks that allows "water/ethylene glycol mix to leak", and expresses opinions about this as

---

[14] *Linnebur v. United Tel. Ass'n, Inc.*, No. 10-1379-RDR-KGS, 2011 WL 3490022, at *3 (D. Kan. Aug. 10, 2011) (citing *Thompson v. Jiffy Lube Int'l., Inc.*, No. 05-1203-WEB-KMH, 2007 WL 608343, at *9 n.20 (D. Kan. Feb. 22, 2007)).

[15] *Id.* (also citing *Pulsecard, Inc. v. Discover Card Servs., Inc.* 168 F.R.D. 295, 309 (D. Kan. 1996)).

[16] *Id.* (citing *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003)).

[17] Mem. in Supp. of Mot. to Compel at 4, ECF No. 117.

[18] *Id.*

[19] *Id.* at 2, 4.

the cause of the fire.[20]  The second set of documents contains the reports of John Maurus, Director of Fire and Explosion Analysis for Probe, Inc., who reported findings to Daimler, which stated that "Coolant leakage from either a coolant line or the coolant reservoir" was "the most probable cause for the fire."[21]  Plaintiff also notes that defendants are discussing indemnification among themselves because of the potential surge tank defect.[22]

Daimler argues that the information is irrelevant because plaintiff's complaint alleges a defect relating to the junction box, precluding it from seeking information about any fire "caused by the ignition of antifreeze or similar vehicle coolants."[23]  Daimler suggests that the request is overbroad because there is no claim "that radiators, coolant lines/hoses, and any other components associated with antifreeze or coolants has anything to do with the defect allegation here."[24]  It submits that plaintiff must show that such accidents are "substantially similar" to junction box fires to discover information about coolant fires.  It additionally objects to the unlimited temporal scope of plaintiff's request, claiming that incidents occurring after the truck fires are not relevant.[25]

In its reply brief, plaintiff addresses Daimler's other incident evidence argument. Plaintiff explains that it needs the opportunity to discover "what facts are available to determine how they may apply to any theory of liability or theory of defense," reemphasizing that Daimler

---

[20] *Id.* at 2 and Trey Mytty's Letter to Daimler's Corporate Counsel, ECF No, 118-1.  Ethylene glycol is used in antifreeze because it disrupts hydrogen bonding, reducing the freezing point when dissolved in water. ETHYLENE GLYCOL, https://en.wikipedia.org/wiki/Ethylene_glycol#Antifreeze (last visited Nov. 25, 2015).

[21] *Id.* at 2–3 and Report of Maurus at 2, 12–13, ECF No. 118-2.

[22] *Id.* at 5.

[23] *Id.* at 3.

[24] *Id.* at 4.

[25] *Id.* at 4.

provided information about surge tanks being a potential cause of the fires in early discovery responses.[26]

Magistrate Judge Teresa J. James's opinion, *McKellips v. Kumho Tire Co.*, provides helpful analysis of how courts across the country address requests for substantially similar product information at the discovery stage.[27] Judge James found that:

> While a plaintiff would have the burden of showing substantial similarity when attempting to introduce evidence at trial about other products, the plaintiff should not be required to show substantial similarity to merely obtain discovery pertaining to other substantially similar products. Placing the significant burden of proving substantial similarity on a plaintiff to *obtain discovery* in the first instance would be misplaced, given that the plaintiff has not yet obtained the information it would need to *prove* substantial similarity. Moreover, the defendant and not the plaintiff would have access to the information necessary to prove or disprove substantial similarity of the defendant's other products.[28]

Although this case deals with whether two potential causes of the truck fires are substantially similar, rather than substantially similar products, the court finds this reasoning instructive. Plaintiff is not required to prove that the information it seeks to discover will be admissible at trial in order for it to be deemed relevant for purposes of discovery.

This is especially true where Daimler produced information indicating that defendants believe the truck fires were caused by the surge tanks leaking coolant. Information about "fires in Model M2 Freightliner trucks caused by the ignition of antifreeze or similar vehicle coolants" is relevant to plaintiff's claim and possibly to

---

[26] Reply at 1, ECF No. 135.

[27] 305 F.R.D. 655 (D. Kan. 2015).

[28] *Id.* (emphasis in the original) (citing *A. H. ex rel. Hadjih v. Evenflo Co.*, No. 10-2435-MSK-KMT, 2011 WL 3684807, at *4 (D. Colo. Aug. 23, 2011), *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005) (internal citations omitted)).

defendants' defenses. Although plaintiff identified a possible problem with the junction box, Daimler identified and produced information suggesting the surge tanks or related parts caused the fires. Plaintiff should be allowed to discover information about surge tank fires so that it can evaluate the parties' theories of the case.

Plaintiff brings breach of warranty, breach of implied warranty and negligence claims against defendants as described above. Whether similar fires have taken place in M2 other truck models appears relevant to plaintiff's claims. However, the court agrees that plaintiff's requests should be limited to fires caused by failures in surge tanks, coolant lines, or reservoirs—those parts identified by defendants' as a likely cause of the fires. As Daimler point out, plaintiff has not alleged, and to the court's knowledge, no defendant produced information suggesting that the fires were caused by, for example, a radiator. Extending the discovery request to include information about any system using coolant would be improper. Plaintiff's requests will therefore be limited to information relating to fires caused by surge tanks and related coolant lines or other related parts.

Regarding Daimler's objection to the temporal scope of the requests, plaintiff's reply asserts that the M2 truck model was first manufactured in 2002. It states that the trucks at issue in this case were manufactured in 2010 and that the request is therefore appropriately limited to information from 2002–present.[29] Daimler provides little argument and no legal authority to support its objection.[30] It states only that the requests are unrestricted in time and that "there is no relevance to any incidents occurring after the

---

[29] *Id.* at 2.

[30] D. Kan. Rule 7.6(a)(4) requires arguments to refer to any legal authority relied upon. Defendants cite none for their assertion that the temporal scope of plaintiff's request is improper.

time of" any alleged warranty made by defendants.[31]  Plaintiff has shown that the scope is limited to a particular model of truck from years 2002 to the present.  Daimler's objection is therefore overruled as unsubstantiated.

The December 2015 Amendments to the Federal Rules require the court *and the parties* "to secure the just, speedy, and inexpensive determination of every action and proceeding."[32]  The court therefore considers the factors laid out in amended Rule 26(b)(1), including: whether the discovery sought is

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[33]

Daimler does not assert that the burden or expense of the discovery sought outweighs its likely benefit.  The cause of the fires is an important factual issue in this case—Daimler produced information indicating defendants' opinions about the cause of the fires.  If other such fires occurred, defendants are the most likely entities to have that information.  The court does not have information about Daimler's financial resources, but it does not suggest that the discovery is beyond its financial capability to produce.  The scope of Interrogatory Number 8 and Request for Production of Documents Number 4 is therefore appropriately limited to the needs of this case.

### III.  Conclusion

---

[31] Resp. at 4, ECF No. 121.

[32] Fed. R. Civ. P. 1 (emphasis added).

[33] Fed. R. Civ. P. 26(b)(1).

Plaintiff's motion to compel is granted in part and denied in part. Daimler shall respond to Interrogatory Number 8 and Request For Production of Documents Number 4 by **January 8, 2016**. But its responses shall be limited to fires involving failures in the surge tank and related coolant lines, or coolant reservoirs—those parts described in the documents produced by Daimler as being the probable cause of the fires. The temporal scope of the requests mirrors the life-span of the M2 truck, which plaintiff explained to be 2002 to present. Because this motion is granted in part and denied in part, the court finds that sanctions are inappropriate.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff Board of Commissioners of Shawnee County, Kansas's Motion to Compel Discovery Responses (ECF No. 116) is granted in part and denied in part. Daimler shall respond to Interrogatory Number 8 and Request For Production of Documents Number 4 by **January 8, 2016**, as described above.

**IT IS SO ORDERED.**

Dated this 11th day of December, 2015, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge