## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BOARD OF COMMISSIONERS OF SHAWNEE COUNTY, KANSAS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 15-4006-KHV |
| DAIMLER TRUCKS NORTH AMERICA, LLC, OMAHA TRUCK CENTER, INC. d.b.a. KANSAS TRUCK CENTER,  and DOWNING SALES & SERVICE, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM & ORDER

This matter comes before the court upon Plaintiff Board of Commissioners of Shawnee County, Kansas's Motion for an Order Compelling Deposition of Trey Mytty (ECF No. 101) and its Motion for Order Compelling Deposition of John K. Maurus (ECF No. 103) and Defendants' Motion for Protective Order (ECF No. 107).  For the reasons stated below, the motions are granted in part and denied in part.

### I.    Background

In 2009, plaintiff purchased from Defendant Omaha Truck Center, Inc. ("Omaha Truck") five Freightliner trucks.[1]  Each had a rear load trash compactor manufactured by Scranton Manufacturing Co., Inc. ("Scranton"), installed by Defendant Downing Sales & Service, Inc. ("Downing") and each was built on a chassis manufactured by Defendant Daimler Trucks North America, LLC ("Daimler").[2]  In February of 2013 and September of 2014, two of the trucks

---

[1] Am. Compl. at 2, ECF No. 46.

[2] *Id.*

caught fire, which resulted in plaintiff losing use of the trucks.[3]  Plaintiff believes that the fires originated in a junction box that controls clearance lights, brake lights, turn signals, and work lights on the trucks and was caused by "electrical arching of a battery cable in and around the Junction Box, which ignited combustible material around the cable."[4]  The court also recently granted in part plaintiff's motion to compel discovery regarding the issue of "coolant leakage."[5]  Plaintiff asserts claims for breach of warranty against Defendant Daimler; breach of implied warranty against Defendant Omaha Truck; and negligence and breach of implied warranty against Defendant Downing.[6]

Plaintiff's two motions to compel are similar in that they both seek to compel depositions.  The first seeks to take the deposition of Trey Mytty, the CEO and president of Omaha Truck.[7]  Defendants oppose the deposition because Mr. Mytty is a high-level employee and they claim he has no knowledge of the facts.  The second motion seeks to compel the deposition of John Maurus.  Mr. Maurus is the Director of Fire and Explosion Analysis at Probe, Inc., which is located in Winnetka, Illinois.[8]  He is also one of defendants' retained experts.[9]  He conducted the inspections of both trucks at issue in this case, took photographs at the inspections, and made annotations on those photographs.[10]  Defendants oppose his deposition at this time

---

[3] *Id.* at 2–3.

[4] *Id.* at 3.

[5] Mem. & Order, ECF No. 136.

[6] *Id*. at  3–6.

[7] Mem. in Supp. of Mot. for Protective Order at 2, ECF No. 108.

[8] *Id.* at 6.

[9] *Id.* at 2.

[10] Mem. in Supp. of Mot. at 2, ECF No, 104.

because they argue that it would be much more efficient to take his deposition following the expert witness disclosure deadline.

Contemporaneously with their responses to plaintiff's motions to compel, defendants filed a motion for protective order seeking to prevent the depositions of Mr. Maurus and Mr. Mytty.  Defendants object to Mr. Mytty's deposition because he is a high-level employee of Omaha Truck.  They believe he should not be deposed, primarily because they claim he lacks personal knowledge of the facts.  Defendants object to the timing of Mr. Maurus's scheduled deposition, but do not ultimately object to him being deposed.  The court will address these arguments below.

## II.    Discussion

### A.  Procedural conference requirements

Federal Rule of Civil Procedure 37 allows a party to "move for an order compelling disclosure or discovery."[11]  The motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[12]  District of Kansas Rule 37.2 also requires a "reasonable effort to confer," which "means more than mailing or faxing a letter to the opposing party.  It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so."[13]

Plaintiff believes it has fulfilled its obligation to confer but argues that, "In withholding Mr. Trey Mytty from deposition, Defendants breach their duty to confer concerning discovery

---

[11] Fed. R. Civ. P. 37(a)(1).

[12] *Id.*

[13] D. Kan. Rule 37.2.

disputes under D. Kan. Rule 37.2."[14]  Plaintiff's counsel attaches as exhibits counsel's e-mails

discussing the depositions at issue in these motions to compel.[15]  The e-mails demonstrate that

counsel conferred, but disagree concerning the appropriateness of deposing Mr. Mytty and Mr.

Maurus, at least at this time.  Counsel did more than "send a letter to opposing counsel."  They

substantively set out their positions regarding the depositions and when the discussion seemed to

reach an impasse, plaintiff filed motions to compel.  In this instance, the court finds that the

parties met the procedural conference requirements.

### B.  Standard for issuance of a protective order

Pursuant to 26(c), "A party or any person from whom discovery is sought may move for

a protective order in the court where the action is pending . . ."[16]  Upon a showing of good cause,

the court may "issue an order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense . . ."[17]  "The party seeking a protective order has the

burden to demonstrate good cause."[18]  This means that the party "must submit a particular and

specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[19]

Whether to enter a protective order is within the court's discretion.[20]  Judges in this district will

---

[14] Mot. to Compel at 1, ECF No. 101.

[15] *Id.* at 101-2–101-6; Mot. for Order Compelling Dep. of John K. Maurus, ECF No. 103-4, Ex. D.

[16] Fed. R. Civ. P. 26(c)(1).

[17] *Id.*

[18] *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000).

[19] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–102 (1981)) (internal quotations omitted).

[20] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995).

generally not grant a protective order wholly prohibiting a deposition.[21]  It has been characterized as a "drastic action" and will not be granted unless "extraordinary circumstances are present."[22]

### C.  The Deposition of Trey Mytty

Plaintiff seeks to depose Trey Mytty, who is the president and CEO of Omaha Truck, and noticed his deposition for November 9, 2015.[23]  It seeks to take Mr. Mytty's deposition because it believes he has special knowledge about facts relevant to discovery.  In support of this argument, plaintiff attaches a letter from Mr. Mytty to Daimler's corporate counsel.  The letter "pertains[] to the surge tank repairs and design . . . was provided to Plaintiff's counsel in the discovery materials and it directly references facts relevant to this lawsuit."[24]

Defendants object to Mr. Mytty's deposition because he is a high-level executive of Omaha Truck "responsible for 12 operating facilities in Kansas, Nebraska, and Iowa" who "does not participate in the day-to-day functions of the various departments within the company."[25]  They state that he lacks personal knowledge of the issues.  He "did not participate in the bidding process . . . sale, delivery, or title of the trucks . . . post-accident investigations . . . [or] inspections."[26] Defendants claim that any knowledge Mr. Mytty has is third-person; that he has not participated in the repairs or maintenance of the trucks; that he has no opinions or

---

[21] *See e.g.*, *Van Den Eng. v. Coleman Co.*, No. 05-MC-109-WEB-DWB, 2005 WL 3776352, at *2 (D. Kan. Dec. 14, 2005); *Horsewood v. Kids "R" Us*, No. 97-2441-GTV-GLR, 1998 WL 526589, at *5 (D. Kan. Aug. 13, 1998).

[22] *Horsewood*, at *5 (quoting *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996)).

[23] Notice, ECF No, 96.

[24] Mem. in Supp. of Mot. to Compel at 2, ECF No. 102.

[25] Mem. in Supp. of Mot. for Protective Order at 3–4, ECF No. 108.

[26] *Id.* at 4.

conclusions and has made no statements about the fires.[27]  Defendants suggest that taking Mr. Mytty's deposition would be unduly burdensome because he does not have personal knowledge of the case and plaintiff has "made no attempt to discover information from other [Omaha Truck] representatives or employees that actually have knowledge of the issues in this case, and from which discovery would be much less of a burden."[28]

In this district, motions for protective orders for high-level employees "are treated under the same standards as any other protective order, while taking into consideration special factors that may apply to such officials."[29]  In *Thomas v. International Business Machines*, the Tenth Circuit determined that the district court did not abuse its discretion in issuing a protective order to prevent the deposition of a corporate defendant's chairman.  In that case, the corporate defendant showed that its chairman had no knowledge of the facts and that his deposition would cause an undue burden.  The court considered factors such as whether the high-level employee had scheduling conflicts with the scheduled deposition, whether the deposition notice was sufficient, whether the high-level employee had knowledge of relevant facts, and whether other company representatives with knowledge were available to be deposed.[30]

Defendants assert that, "Plaintiff here has hastily and unilaterally set the deposition to occur on a date and time that presents undue burden, hardship, and annoyance on Mr. Mytty and

---

[27] *Id.*

[28] *Id.* at 5.

[29] *See, e.g., Van Den Eng. v. Coleman Co.*, No. 05-MC-109-WEB-DWB, 2005 WL 3776352, at *2 (D. Kan. Dec. 14, 2005) (citing *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995)); *Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. Pepsico, Inc.*, No. 01-2009-KHV-DJW, 2002 WL 922082, at *1 (D. Kan. May 2, 2002); *Horsewood v. Kids "R" Us*, No. 97-2441-GTV-GLR, 1998 WL 526589, at *5 (D. Kan. Aug. 13, 1998).

[30] 48 F.R.D. 478, 483 (10th Cir. 1995).

[Omaha Truck].  His schedule simply does not permit the deposition to occur on that day."[31]
The Deposition Guidelines listed on this court's website state that "[a]bsent extraordinary
circumstances, counsel shall consult in advance with opposing counsel and proposed deponents
in an effort to schedule depositions at mutually convenient times and places."[32]  Plaintiff's
counsel's e-mails to defense counsel evidence that dates for Mr. Mytty's deposition were
originally discussed but that the conversation soon ended when defendants' counsel expressed
opposition to the deposition taking place at all.[33]  If defendants had responded to plaintiff's
counsel's e-mails with Mr. Mytty's availability, scheduling may not have been an issue.   Aside
from defendants' argument that the deposition was not scheduled by agreement, they raise no
substantiated annoyance, embarrassment, oppression, undue burden or expense argument
opposing Mr. Mytty's deposition.  Defendants' main argument is that Mr. Mytty does not have
relevant discoverable information about the facts of this case.

In *Van Den Eng v. The Coleman Company, Inc.*, the plaintiff sought to depose The
Coleman Company's former CEO.  The Coleman Company objected, claiming that its former
CEO had "no unique information relevant to the issues of" the case.[34]  United States Magistrate
Judge Donald W. Bostwick found that where the former CEO was copied on a memorandum
regarding the matters at issue in the suit, the court could not find that his deposition would not
lead to the discovery of admissible evidence Rule 26(B)(1).[35]  Here, plaintiff has a letter signed

---

[31] *Id.* at 6.

[32] U.S. DISTRICT COURT DISTRICT OF KANSAS DEPOSITION GUIDELINES at ¶3, *available at*
http://www.ksd.uscourts.gov/deposition-guidelines/.

[33] Mot. for an Order Compelling Dep. of Trey Mytty 3, ECF No. 101-2–101-3 Exs. B & C, counsel's e-mails.

[34] 2005 WL 3776352, at *3.

[35] *Id.*

by Mr. Mytty discussing the trucks at issue in this case and his opinions about why they caught

fire.  Defendants make no attempt to explain this letter or Mr. Mytty's signature on it.

> Federal Rule of Civil Procedure 26(b)(1) provides that:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Because Mr. Mytty has expressed opinions about the trucks and why they caught fire, his

testimony appears relevant and indeed important to the resolution of the issues in this case.

Plaintiff seeks damages in excess of $75,000 from each defendant and defendants fail to make

any substantiated undue burden or expense argument suggesting that the burden of producing

Mr. Mytty for deposition outweighs the benefit of his testimony.  Defendants provide no

information suggesting that they do not have sufficient financial resources to produce Mr. Mytty

for deposition.  Even if Mr. Mytty does not wind up having first-hand information, as defendants

allege, "[a]s a general rule a party seeking discovery may test an asserted lack of knowledge."[36]

Defendants argue that plaintiff should not be allowed to depose Mr. Mytty because it has

not yet deposed any other representatives from Omaha Truck.  They do not suggest any of their

employees or representatives who they believe may be more appropriate.  In Omaha Truck's

initial disclosures it listed the trucks' drivers, first responders, witnesses, and plaintiff's

employees as those who might have discoverable information.  It did not list any of its own

employees or representatives.  If, as defendants suggest, there are other Omaha Truck

"representatives or employees that actually have knowledge of the issues in this case, and from

---

[36] *Horsewood v. Kids "R" Us*, 1998 WL 526589, at *5.

which discovery would be much less of a burden," it did not disclose their identities in its initial disclosures and it has not provided them in its briefing.[37]

Defendants have not shown good cause for a protective order. While it appears that Mr. Mytty had a scheduling conflict with the original deposition date and is a high-level employee with many responsibilities, plaintiff has refuted defendants' arguments that he has no knowledge of the events at issue in this case. The letter signed by Mr. Mytty, discussed above, alone shows that his deposition is likely relevant to the claims and defenses in this case. Defendants raise no other substantiated objections to the deposition taking place at a mutually agreeable alternative date. Therefore, the parties shall meet and confer and determine a mutually agreeable date and time for Mr. Mytty's deposition, which shall take place on or before **February 4, 2016**.

### D.  The Deposition of John K. Maurus

Plaintiff also seeks to depose John K. Maurus, the Director of Fire and Explosion Analysis at Probe, Inc., and one of defendants' retained expert witnesses. Mr. Maurus is not employed by defendants. Plaintiff originally noticed his deposition to take place on November 4, 2015 but it did not issue a subpoena.[38] It seeks to take Mr. Maurus's deposition as a fact witness because he conducted the site investigations for the fire-damaged vehicles at issue in this case.[39] Plaintiff attaches Mr. Maurus's reports for each of the trucks involved and explains that deposing him will allow plaintiff to ask him questions about his observations. Specifically, plaintiff seeks information about annotations he made on photographs of the trucks, taken at the inspections.[40]

---

[37] Mem. in Supp. of Mot. for Protective Order at 3–4, ECF No. 108.

[38] Notice, ECF No. 95.

[39] Mot. for Order Compelling Dep. of John K. Maurus at 2, ECF No. 103.

[40] Mem. in Supp. of Mot., ECF No, 104-1Ex. A, Report of inspection of Feb. 8, 2013 fire & 104-2 Ex. B Report of inspection of Sept. 3, 2014 fire.

Plaintiff argues that even if Mr. Maurus is a retained expert, his deposition should be allowed as a fact witness because he "inspected both vehicles well in advance of any litigation. His reports indicate that he was asked to determine the origin and cause of the fire."[41]  Plaintiff argues that this type of report is akin to a field inspection and not the type of expert testimony contemplated by the Federal Rules. Mr. Maurus's report was disclosed to plaintiff and several other people were present at the inspections suggesting that they are not "performed in confidence or with any effort to shield or exclude others from participating in his analysis."[42]

Defendants' objections to Mr. Maurus's deposition appear to be based on undue burden or expense. They object to Mr. Maurus's deposition as a fact witness because he is a "retained expert witness who is expected to provide expert trial testimony."[43]  They "do not object to Plaintiff's ability to depose Mr. Maurus in due time."[44]   They suggest only that "it is a waste of everyone's time, money, and efforts to depose Mr. Maurus prior to the deadline for his disclosures, and then seek to depose him again post disclosures, which Defendants anticipate Plaintiff will seek to do."[45]

Generally, the "methods of discovery may be used in any sequence."[46]  And "[a] party may, by oral questions, depose any person, including a party, without leave of court . . ."[47]

---

[41] *Id.* at 2.

[42] *Id.* at 3.

[43] Mem. in Supp. of Mot. for Protective Order at 6, ECF No. 108.

[44] *Id.*

[45] *Id.* at 6.

[46] Fed. R. Civ. P. 26(d)(3).

[47] Fed. R. Civ. P. 30(a)(1).

However, the court may also limit the frequency or extent of discovery.[48]  Federal Rule of Civil Procedure 1 states that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  The committee notes on the 2015 Amendment to Rule 1 explain that just as the rule applies to the court "so the parties share the responsibility to employ the rules in the same way."

Neither party suggests that Mr. Maurus's deposition testimony is irrelevant.  Defendants merely seek to minimize expense and conduct discovery in the most efficient way possible.  The court agrees that taking Mr. Maurus's deposition at this time appears to be premature.  But defendants have no standing to object to Mr. Maurus's deposition as a fact witness.  To object to Mr. Maurus's deposition being taken, defendants must show that they have a personal right or privilege with respect to the subject matter requested.[49]  Defendants do not make any such argument.  But they do point out that if plaintiff chooses to take Mr. Maurus's deposition as a fact witness it will need to subpoena him because he is not a party.  "He is an independently retained expert witness.  Plaintiff has filed a Notice of Deposition; it has not served any subpoena that would command a non-party to appear for deposition."[50]  The court agrees.  There is no evidence on the docket that a subpoena was issued for Mr. Maurus's deposition.  Although this seems to undercut plaintiff's argument that it seeks to depose Mr. Maurus as a fact witness.  The court cannot compel a non-party to appear absent a subpoena.  Plaintiff's motion to compel Mr. Maurus's deposition is therefore denied.

---

[48] Fed. R. Civ. P. 26(b)(2).

[49] *See, e.g.*, *Peterbilt of Great Bend, LLC, v. Doonan*, No. 05-1281-JTM, 2006 WL 3193371, at *2 (D. Kan. Nov. 1, 2006).

[50] *Id.* at 2.

However, the court will not prohibit plaintiff from seeking to take Mr. Maurus's deposition as a fact-witness in the future.  As stated above, no party suggests that his deposition would not lead to relevant information.  However, keeping the admonitions of Rule 1 in mind, absent a compelling reason to conduct the deposition early, it would be more efficient to take Mr. Maurus's deposition after the April 11, 2016 deadline for defendants to make expert witness disclosures.  In the current briefing, plaintiff does not explain any particular need to take Mr. Maurus's deposition early.  Further, if plaintiff chooses to subpoena Mr. Maurus and take his deposition as a fact witness prior to all expert reports being exchanged, and then later seeks to depose him again, it will first have to obtain either defendants' agreement or leave of court.[51]

Defendants also allege that plaintiff did not consult them in scheduling Mr. Maurus's deposition notice.[52]  Plaintiff does not produce evidence that it attempted to find a mutually agreeable time to schedule the deposition.  As discussed above, this is contrary to this district's policies.  In future the parties shall "consult in advance with opposing counsel and proposed deponents in an effort to schedule depositions at mutually convenient times and places."[53]

### E.  Payment of expenses

Plaintiff requests "sanctions provided by K.S.A. 60-237."[54]  Federal courts apply federal procedural law.[55]  The Federal Rules of Civil Procedure and the District of Kansas's Local Rules govern when a party should be sanctioned.  Plaintiff's request for sanctions under Kansas law is

---

[51] Fed. R. Civ. P. 30(a)(2)(A)(ii).

[52] Mem. in Supp. of Mot. for Protective Order at 6, ECF No. 108.

[53] U.S. DISTRICT COURT DISTRICT OF KANSAS DEPOSITION GUIDELINES at ¶3, *available at* http://www.ksd.uscourts.gov/deposition-guidelines/.

[54] Mot. for an Order Compelling Dep. of Trey Mytty at 3, ECF No. 101.

[55] *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

denied.  Federal Rule of Civil Procedure 37(a)(5) governs which party, if any, shall bear the expense of briefing a motion to compel.  Because this motion is granted in part and denied in part, the court finds that sanctions are not warranted in this case.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff Board of Commissioners of Shawnee County, Kansas's Motion for an Order Compelling Deposition of Trey Mytty (ECF No. 101) is granted in part and denied in part.  The parties shall meet and confer to schedule the deposition of Trey Mytty at a mutually agreeable time and place.  The deposition shall occur on or before **February 4, 2016**.

**IT IS FURTHER ORDERED** that Plaintiff Board of Commissioners of Shawnee county, Kansas's Motion for Order Compelling Deposition of John K. Maurus (ECF No. 103) is denied.

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order (ECF No. 107) is granted in part and denied in part.  It is granted with respect to defendants' objections to the unilateral scheduling of depositions in this case, to the extent that occurred.  It is denied in all other respects.

**IT IS SO ORDERED.**

Dated this 15th day of December, 2015, at Topeka, Kansas.

s/ K. Gary Sebelius_____
K. Gary Sebelius
U.S. Magistrate Judge